# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| VERLIN P. COLTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:08-CV-527 JVB |
| | ) | |
| ROCKWELL AUTOMATION INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant Rockwell Automation Inc.'s Motion in Limine to Exclude Plaintiff's Expert [DE 64]. Defendant contends that Plaintiff's expert, Dr. Phillip Nine, is not qualified to render expert opinions on Plaintiffs injury and that Dr. Nine's opinions are not sufficiently based in science or appropriately supported by validation and evidentiary reliability.

**A.    Background and Facts**

Plaintiff alleges that in 2006, while working at a factory in Peru, Indiana, he was injured by a machine referred to as a "shooter press." The shooter press was equipped with what is known as a "Allen-Bradley" controller, manufactured by Defendant. The shooter press was used to manufacture an automotive part known as a "bushing." The press was operated by placing the parts in the correct spots in the machine, then putting a finger from each hand onto the proximity

switches,[1] which causes the press to cycle and manufacture the part. Because the machine requires both hands to be placed on the proximity switches to operate, ordinarily, an operator's hands would be completely out of the way when the press cycled. Plaintiff contends that the shooter press spontaneously cycled onto his hand as he reached in to take a finished part out of the press.

Plaintiff retained Dr. Philip Nine to investigate the cause of the spontaneous cycling. Dr. Nine concluded that Plaintiff's injuries were caused by the press inadvertently starting a new cycle:

> It is my technical opinion, based on the examinations of documents, reports, depositions, and my personal inspection of the site, involved machine, wiring and components, that the injury sustained by [Plaintiff] was a direct result of the inadvertent operation of a new press cycle. It is my opinion that the involved press cycled because the input conditions required for starting a new press cycle were met. It is my opinion that those input conditions were present because the . . . proximity switches used to initiate a new press cycle were improperly and negligently wired. It is my opinion that the improper and negligent wiring of the proximity switches was a direct result of a failure to warn by . . . [Defendant] . . . of the dangerous and serious consequences of such wiring. It is my opinion that this incident would not have occurred if the . . . proximity switches had been properly wired. It is my opinion that the improper and negligent wiring of the proximity switches made the inadvertent initiation of the press cycle sure to happen.

DE 65-1 at 1. In short, Dr. Nine believes that the improper and negligent wiring of the proximity switches (which ultimately caused the accident) are directly attributable to Defendant's failure to warn of the consequences of wiring in such a manner.

**B.     Analysis**

---

[1] The proximity switches were manufactured by Banner Engineering Corporation, which has been dismissed as a party to this lawsuit.

2

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the United States Supreme Court's ruling in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Federal Rule of Evidence 702 allows an expert qualified by "knowledge, skill, experience, training, or education" to testify if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."

In *Daubert*, the Court interpreted Rule 702 to require district courts to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. As a gatekeeper of experts' opinions, the Court must examine the expert's methodology and reasoning to make sure they are based on firm science. *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989). The Court must make two determinations: first, it must determine whether the expert is qualified and will testify to reliable scientific knowledge, *Deimer v. Cincinnati Sub-Zero Prod., Inc.*, 58 F.3d 341, 344 (7th Cir. 1995); second, it must determine whether the testimony is relevant, that is, whether it will assist the jury in understanding the evidence or deciding a fact at issue. *Id*.

In determining whether an expert is qualified under the first prong, the district court consider's the expert's "knowledge, skill, experience, training, or education" as required by Rule 702, but bears in mind that "extensive academic and practical expertise" is not an expert's only qualifier: "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 590 (7th Cir. 2000). Therefore, a court must take into consideration the expert's "full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith*, 215 F.3d at 718.

3

Next, under the first part of the analysis, in order to determine whether an expert will testify to reliable scientific knowledge, the Court considers four factors:

(1) whether the theory or methodology can be or has been tested;

(2) whether the theory or methodology has been subjected to peer review and publication;

(3) whether there is a known or potential rate of error and whether there are standards controlling the operation of the methodology; and

(4) whether the theory and methodology are generally accepted in the relevant community.

*Deimer*, 58 F.3d at 344, citing *Daubert*, 509 U.S. at 593. The Court must focus on the principles and methodology the expert employs and not on the conclusions that are generated. *Daubert*, 509 U.S. at 594–595.

In his complaint, Plaintiff contends that Defendant is liable to him on the basis of strict liability and negligence. All products liability actions in Indiana are governed by the Indiana Product Liability Act, Ind. Code § 34-20-1-1 *et seq*, regardless of whether the theory of liability is negligence or strict liability in tort. Presumably, Plaintiff is pursuing his action against Defendant on a failure to warn theory. In a failure to warn claim in Indiana, "the party making the claim must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product or in providing the warnings or instructions." Ind. Code § 34-20-2-2. The Indiana Supreme Court has held that a manufacturer of the product in question is required to give warning if (1) it knew or had reason to know that the product was likely to be dangerous when used in the manner employed by the plaintiff; and (2) it had no

reason to believe that plaintiff would realize that dangerous condition. *Am. Optical Co. v. Weidenhamer*, 457 N.E.2d 181, 187 (Ind. 1983).

Defendant objects to Dr. Nine being allowed to testify in this matter for two reasons, both under the first prong of the *Daubert* analysis. First, Defendant contends that Dr. Nine is not qualified to render an expert opinion pertaining to the adequacy of the written warnings in this case. Second, Defendant maintains that Dr. Nine's opinions "are not sufficiently based in science or appropriately supported by validation and evidentiary reliability." (DE 65 at 2).

As to their contention that Dr. Nine is not qualified to render an opinion in this matter, Defendant maintains that Dr. Nine has no specialized knowledge or experience in the area of written warnings. Therefore, they argue, "any of his opinions about, or related to, safety warnings contained in [Defendant]'s User Manual cannot survive a *Daubert* challenge and must be barred from any evidence offered to this court in hearings or at trial." (DE 65 at 4).

In a failure to warn claim, the underlying factor is the need to issue a warning in the first place. In other words, the claim cannot move forward unless the plaintiff shows that the defendant knew or should have known that its product was dangerous at the time the plaintiff's injury occurred. Dr. Nine need not have specialized knowledge or experience in written warnings because his opinions pertain to the safety of Defendant's product on the day of Plaintiff's injury. Dr. Nine's education and professional background is sufficient to qualify Dr. Nine to testify as an expert in this case.

The Court now turns to Defendant's contention that Dr. Nine's opinion is not reliable scientific knowledge. Defendant maintains that several of Dr. Nine's methods for reaching his conclusions were flawed. For example, Defendant points out that Dr. Nine's theory that

"transient voltage" caused the press to spontaneously cycle, but Dr. Nine is "unaware of the source of that voltage." (DE 65 at 6). Additionally, Defendant states that its own expert concluded that Dr. Nine "had insufficient information to render an opinion of the specific physical events which caused the accident" and he did not eliminate other possible causes of the spontaneous cycle. (DE 65 at 7).

None of the reasons proffered by Defendant merit the exclusion of Plaintiff's expert. The discrepancies Defendant points out are a matter of credibility that are more appropriately highlighted during cross-examination at trial. Furthermore, the Court concludes that the methodology and principles Dr. Nine employed in reaching his conclusions are sufficient to ensure that his testimony "is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. Defendant's motion in limine is denied.

**C.    Conclusion**

For the foregoing reasons, Defendant's Motion in Limine to Exclude Plaintiff's Expert [DE 64] is DENIED.

SO ORDERED on September 29, 2010.

              s/ Joseph S. Van Bokkelen
             JOSEPH S. VAN BOKKELEN
             UNITED STATES DISTRICT JUDGE